Move now to Case No. 5, Hammond Power Solutions, Incorporated v. National Union Fire Insurance, Illinois National Insurance Company. Good morning and greetings from Milwaukee. James Goldschmidt on behalf of Appellant Hammond Power Solutions. May it please the Court. Resolving this appeal requires some thought about what the parties meant by the term radiation as used in the radioactive matter exclusion. And linguistically, by definition, that term radiation demands a source. Radiation from what? The most reasonable reading is that it refers to radiation from radioactive matter as used here. And so what do we do with the or in the radioactive, in the exclusion? Yes, Your Honor. So our reading is actually the only one of the two being offered to you that gives independent meaning to both of those provisions. There's the radioactive matter piece, which is contact with radioactive matter, and then there's any form of radiation, which is the radiation emitted from that radioactive matter. It's important to remember that the word radiation, like the word emission, is just an empty sack to be filled with some context, some content from the surrounding context. Here that context is radioactive matter. Without that context, without some tether to the surrounding language, we immediately find ourselves in a situation where the... Are there different forms of radiation? Yes, there are different forms of radiation from radioactive matter, Your Honor. We point that out in our reply brief. So in that sense, our interpretation also holds. This is on page 10 of our reply brief. Those forms include alpha particles, beta particles, gamma rays, x-rays. All of those are various forms of radiation from radioactive matter. And so in that sense, our interpretation does give independent meaning to both prongs of this exclusion. The insurers promise an independent meaning for both prongs, but they never make clear what it is. And it's hard to understand why, if radiation is really so broad as the insurers say it is, that we would need to refer separately to radioactive matter at all. And a reasonable insured in Hammond's position... So what I'm following is that if we read it the way the insurers want us to read it, it would be superfluous language, basically, to have radioactive matter and any form of radiation. That's correct, Your Honor. If radiation is so broad... Go ahead. If radiation is so broad to encompass not just radiation from radioactive matter, but also, in their telling, sunlight and moonbeams and lightning strikes and all other natural forms of radiation, then we wouldn't need to separately call out radioactive matter, as this exclusion does. At the end of your brief, you suggest, if I understood you correctly, that the phrase, any forms of radiation, would be different from the phrase, any and all forms of radiation. Could you point me to your reference there, Your Honor? The concluding paragraph. Is this in our initial brief? Yes. Okay. Page 28, first sentence. And I'm trying to understand why those two phrases should be interpreted differently. Yeah, I think that that phrase in the conclusion is probably more rhetorical than technical. The point that we're trying to make here is that radiation, as used in the radioactive matter exclusion, should be understood to refer to radiation from radioactive matter, and that any form of that refers to alpha, beta, gamma X-rays. Did any insurance broker tell your client that this policy would cover claims based on electromagnetic fields? I would say yes, because if we walk through the policy, starting with the declarations page, this is at page 88 of our appendix, our client, Hammond Power Solutions, is classified as an electric power distribution or transmission equipment manufacturer. And that designation is not just a throwaway. Are you referring to the appellant's appendix? Yes, appellant's appendix, page 88. Just the nature of the business, I understand that, but I'm asking for something more explicit. Yes, I'm building up to it, if you'll permit me, Your Honor. What I'd like to point out just about this is it's not just a throwaway designation of the business. This correlates with a five-digit code that becomes the basis of the premium that is charged to my client for the insurance, which means the carrier knows very well what business my client is in and what they make. And that's the basis for the money they're being charged. So then we get to the granting provisions of the policy, starting with the grant of coverage at page 19 of our appendix, offering to pay sums for bodily injury based on occurrences throughout the coverage territory, which is worldwide. And then when we get to the definition of bodily injury on page 31 of our policy, sorry, page 31 of our appendix, it's defined as bodily injury, sickness, or disease sustained by a person, including death resulting from any of these at any time. And then we have to tie that into occurrence, because occurrence is doing some clear signaling here. The definition of occurrence is on page 33 of the appendix, and it means an accident. It's clearly got coverage but for the exclusion. Well, but, Your Honor, that's the case with every exclusion. What we're trying to do here is, is there something that my client would specifically take away from the policy to conclude that they have coverage for their product? I'll take it from your, the answer to my original question is no. But let me see if I understand the extent to which your client's business makes a difference here. Suppose the couple who brought the underlying claim here also named the owner of an apartment building where they lived, where the transformer was installed, and that owner had an identical policy. Would there be any difference in the way the exclusion should apply to the claim against your client versus the apartment owner who is not in the business of manufacturing electrical equipment? It would not differ because, again, that term radiation, as used in the exclusion, should not be interpreted to include EMF, period. It doesn't depend on your client's business, then? Not in that respect, but it does matter, and the reason we highlight my client's business and what the insurers knew they were producing is because of the Wendelco case. And the Wendelco case talks specifically about what I would call the concept, also familiar in Wisconsin insurance law, of contextual ambiguity, both giving and then taking away coverage in a way that itself creates an ambiguity, an interpretation of the policy. And we're not just talking about the kind of giving and taking away every time there's an exclusion. We're talking about a more particular type of giving and taking away. And that's why I'm focused on things like the definition of occurrence, which here specifically refer to continuous or repeated exposure to substantially the same general harmful conditions. Seeing that we're under Wisconsin law, when you're looking at that exclusion, a reasonable person in the position of Hammond would have thought what? They would have thought, we make transformers. Electromagnetic fields are inherent in our business, in our product, not just our business, in the same way that they are inherent in anything that has electricity running through a wire. This microphone is emitting an electromagnetic field. Judge Ripple's laptop is emitting an electromagnetic field. They would not have looked at a radioactive matter exclusion and thought, that bars coverage for claims related to my product, which is the policy that I'm purchasing for my business in the first place. They would not think that. They would look for an EMF exclusion, and they would look down the list to see if it was there, and they wouldn't find it, and they'd think, great, there's no EMF exclusion. That's not what this radioactive matter exclusion means. You both cited to the EPA website, and they both say EMT radiation is a common form of radiation. Yes, that's right, but it's radiation in the scientific sense, in the way that lightning is radiation in the scientific sense. It's not what the layperson thinks of when they hear the word radiation. If you walked up to a man or woman on the street and said, do you think your hair dryer is emitting radiation, they would say, no, it's not radioactive, but technically it is. So when we admit that EMF is a form of radiation, that's because what the science says, but it's not what the typical layperson would understand, and the case on point for that is Crescent Plaza Hotel. This court's decision there says we have to interpret these terms not in their scientific sense, but as the ordinary person would understand them. Thank you, counsel. I see that I'm out of time. Thank you for yours. Ms. Hartman. May it please the court, good morning, Your Honors. Kimberly Hartman on behalf of the Appalese National Union Fire Insurance Company of Pittsburgh, PA, an Illinois national insurance company. The policies that were issued here contain a clear and precisely worded exclusion, which in a single line of text excludes coverage for bodily injury arising out of exposure to persons, to any radioactive matter or any form of radiation. There's no dispute here that the underlying lawsuit against Hammond alleges bodily injury caused by the underlying plaintiff's exposure to EMF radiation. There also is no dispute that EMF radiation is a form of radiation, and therefore under the plain and clear terms of the unambiguous text, the underlying law's coverage for the underlying lawsuit is excluded. The exclusion should be interpreted and enforced as written. Neither strict nor narrow construction of an exclusion allows courts to disregard unambiguous policy terms or to create a better contract for Hammond. There's simply nothing in the text of the exclusion or the policy as a whole which indicates that EMF radiation would be excluded from this endorsement. Hammond nevertheless argues that the district court improperly interpreted the policy language according to the literal meaning of the words in the policy and according to Hammond's intent. But under Wisconsin law, the party's intent must be determined by the language of the policy, and the policies here specifically and unambiguously applies the exclusion to any form of radiation. What do we do with your opposing counsel's argument that this is our business? Our transformers emit EMT radiation. We would not have signed up for this policy because it goes against the nature of kind of what our business is. That may be true, but the intent of the parties and the scope of the coverage is determined by the actual written words in the contract. And there are no terms in the contract which would accept EMF radiation out of the definition of any form of radiation. In Hammond, as you look at Hammond as a reasonable and short Hammond, and counsel here said that EMF radiation would be something that they would want, that they know that their electronic transformers emit radiation, emit EMF radiation. So there can be no argument that they wouldn't read this provision and understand that EMF radiation is a form of radiation, that their transponders could emit this type of radiation. And reading that Hammond gives, it's unreasonable, not only because it deletes the word any, which has broad interpretation. This court, as well as the Wisconsin Supreme Court, has held that when it modifies the word or a phrase, it indicates broad interpretation or broad application, but also they write out the word or. Or is a disjunctive. Wisconsin Supreme Court and Hull v. State held that the term or is unambiguous and its meaning plain. Or is a disjunctive connector of alternate choices in a series. Here there were two risks that are excluded under the exclusion. Bodily injury arising out of exposure to radioactive matter and bodily injury arising out of exposure to radiation. And the two are not the same. Radiation can come in a form, can be emitted from radioactive matter, but you can be exposed to radioactive matter in a solid sense or solid form or vapor form and that doesn't amount to radiation. For instance, radium. If you touch radium, you can, you know, exposure, repeated exposure to radium, which is a radioactive matter. Radioactive matter is a chemical compound where the nucleus of the atom is unstable. That may never lead to radiation, but you can still be injured by the constant contact and exposure to radium. What is it that causes the injury other than the emission of radioactive particles? Correct. Radioactive matter may never result in a transformation or re-stabilization, which can ultimately result in radiation. You can be harmed by... What other language would we use to describe the nuclear particles emitted by the radium nucleus besides radiation? Your Honor, radioactive matter that is in decay, transforming in decay, that is emitting energy, that is radiation. Yeah. But exposure and bodily injury to radioactive matter is not always attenuated with, it's not always in combination with radiation. I'm sorry, there's a reason I went into liberal arts. I want to make sure I have it right. Are we suggesting that radioactive matter and radiation, there's a separation between the two? Absolutely, Your Honor. Radiation is energy. It's particles of energy that are released in the air. It can come from radioactive matter. It can come from electric or magnetic forces like the electric transponders. It can come from other sources that are naturally occurring. All radiation does not emanate from radioactive matter, and all radioactive matter... No, no, no, it's the other way, though. I want to make sure that the argument from the other side is that radioactive matter is radiation. No, Your Honor. Okay. You can be exposed to radium, to cobalt, to plutonium, to uranium, and it's not in a radiating form. Radioactive matter is simply a chemical compound that has an unstable atom. We're talking about elements, not compounds. Correct. Sorry, Your Honor. Correct. Okay. Can we try economics instead? Sure. I always look for evidence, and almost never find it in such cases, for evidence about what your client would have charged as a premium, what was actually charged in this case, and what it would have charged to issue this policy without the exclusion for radioactive matter and radiation. Your Honor, I do not have that information, and what I would submit to you is the type of business does not determine the scope of coverage. It's the insuring agreement and the exclusions, which add and subtract coverage. I know the lawyers only like to look at the language. What I'm suggesting is that these cases would make a lot more sense if we also understood the economics behind them and had that evidence in the record, just as we often, for example, have negotiating history in commercial contract cases. Sure, Your Honor, and I don't have a response to that because I don't have information as to how these rates were calculated, but I would say that this is a CGL policy, a $1 million CGL policy, and there's nothing in the rate that would indicate that this policy, despite the plain language, meant to include all risks associated with being an electrical power distribution company as opposed to any other company. Let's get back into all of our comfort level and talk about words. Your opposing counsel talked to us about the doctrine of contextual ambiguity. Is that doctrine any different in Wisconsin than in most states? No, Your Honor. In other words, Wisconsin is basically in the mainstream. Correct, Your Honor, yes. You read the insurance policy as a whole, and when you read this exclusion in the whole of the policy, there are no other terms that would restrict or that accept out EMF radiation from the plain definition of any form of radiation. There is nothing in the simply the type of business doesn't transform or doesn't provide any additional coverage. There's Wisconsin Supreme Court precedent that the title doesn't control, and that if you look at the Falk case, I think that's pretty comparable, and a good example there, there was an endorsement, and it was titled Farm Chemicals Limited Liability, and it provided liability coverage for injury caused by chemicals, liquids, or gases, and Wilson Mutual argued that it wouldn't apply to liquid manure because it wasn't a farm chemical, and the court said no. The endorsement, despite the endorsement title not mentioning chemicals or not mentioning liquids, the text of the policy did, and it controlled. Now Hammond notes that that was in a granting provision of insurance, but it doesn't matter because the court found that the plain text there of the actual provision controlled. In Wisconsin, are insurance policies, are they subject to any kind of state scrutiny, state regulation? Does the form of the policy, does the policy language at any point have to be approved by the state? Yes, Your Honor, and in fact, this specific endorsement was submitted to the Wisconsin Department of Insurance. It was, the title was listed. Counsel, you've got to move back to the mic. I'm sorry. When it was submitted and approved by the Wisconsin Department of Insurance, the form's title was listed, radioactive matter exclusion, and the description of the form was, this endorsement excludes all liability coverage for any radioactive matter or any form of radiation, and that is found in the appendix. It's document 55-1, page 20. Would there be any value in our asking the State Department of Insurance to file an amicus brief in this case? No, Your Honor. I do not think so. I think the Wisconsin law is crystal clear that you read the provisions of the insurance policy. You apply the plain and clear and unambiguous language, and there's no reasonable interpretation of any form of radiation, which limits it and accepts out EMF radiation. That you would take out the word any, and you would take out the word form. Source is irrelevant under this policy because it says any form of radiation. You would also take out the word or. I understand. This case was brought in state court, wasn't it, originally? It was originally brought in state court, and then it was removed. You removed it, right? Correct, Your Honor. Why would an insurance company, which is subject to state regulation, insurance is a state-regulated matter, want to remove, and we're clearly applying state law here, why would you want to remove this to the federal court? Your Honor, I. And get up and talk to us about state law. Why didn't you leave this in state court? Your Honor, I was not part of that decision-making process. It predates my participation, but certainly the district courts here in Illinois, as well as in Wisconsin, interpret insurance contracts in the various states and are more than capable of doing so. And, in fact, Judge Ludwig, in this case, correctly applied Wisconsin law, so there was no question that no reasonable insured in Hammond's position would read this. It does raise, I must admit, I think in the mind of at least one federal judge, a question as to why insurance companies are so scared of bringing cases in the state court, in the state which regulates the text of that insurance policy. Your Honor, I. It does raise a suspicion. Why do you want to forum shop and go to another judge, rather than a state court that interprets state law and you're bound by state law? Correct, Your Honor. And I think it is, obviously, the insurance carriers respect the state courts as much as they respect the federal courts. No, I don't think they do. They always remove the cases to the federal court. That's my point. Right. We can agree to disagree on that, but I guess my point. Maybe we ought to certify this to the Wisconsin Supreme Court and find out what the justices of that court think about this. Why don't we do that? Your Honor, is there a particular question regarding Wisconsin state law that you think that I could address that isn't clear? Well, apparently we're all talking about this contextual ambiguity quite a bit, aren't we? We are, Your Honor. I think going back to that, again, I have to reinforce that there was no text in the policy to create an ambiguity here. The exclusion in eight words sets forth the scope of the risk that's excluded. It's radioactive matter, any radioactive matter or any form of radiation. And the interpretation by Hammond seeks to either excise out or any form of radiation from the exclusion because it would already be excluded if radioactive matter resulted in radiation harming someone, or it takes out the or, or it adds words to the end of the exclusion and changes any form of radiation to mean only forms of radiation that are emitted from radioactive matter. And that violates numerous rules of contract interpretation under Wisconsin law, under Wisconsin precedent. Thanks. Thank you. Counsel, two minutes. Thank you, Your Honor. Do we know the answer to Judge Whipple's question, why this case was removed? I wouldn't want to speculate, Your Honor. All right. I think, before I move on, I want to point out on the doctrine of contextual ambiguity, specifically in Wisconsin. We know maybe the Illinois courts haven't received Wendelco so well in Wisconsin. The doctrine is alive and well. The two cases I would point you to are Folkman and Maratz. Those are both cited in both of our briefs. The other doctrine that I don't want to lose sight of, in addition to contextual ambiguity, is the Wisconsin line of cases finding that when a particular general term is given, and it's literal meaning, that meaning is so broad as to be absurd and must not be what the parties meant. That's a different line of cases. The primary one on point is Wisconsin builders. That's also cited in both of our briefs. That's the H2SO4 rule. Yes. The equation works well, but the result smells bad. Correct. Yes, that's right. And the American states case from Illinois is, of course, applying Illinois law, but explains the rationale of that case, I think, quite well. So that would be another one. You mentioned another case directly before that. The Wisconsin builders case. That. Thank you. So that doctrine also matters. The key point that I'd like to land on and leave you with is our interpretation, Hammond's interpretation here, is at least reasonable. And ultimately, the district judge's decision finds that it is not. That's what we take issue with. If AIG wants to say give it the broadest possible interpretation, you can entertain that, but you can't conclude that our interpretation is at least not reasonable. And if it is reasonable, we have ambiguity that under the doctrine of contra preferentum requires this case to be resolved in our favor. For that reason, we would ask that you reverse and enter an instruction for the district court to enter summary judgment in my client's favor. Thank you. Thank you. We'll take the case under advisement.